UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JOSHUA MICHAEL HAVENS** | **CIVIL ACTION NO. 23-1245** |
| | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **MOREHOUSE PARISH SHERIFF'S OFFICE, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Plaintiff Joshua Michael Havens, a prisoner at Morehouse Parish Jail proceeding pro se and in forma pauperis, filed this proceeding on approximately September 8, 2023, under 42 U.S.C. § 1983. He names the following defendants: Morehouse Parish Sheriff's Office, staff at Morehouse Parish Jail, Corporal White, and Lieutenant John Doe.[1] For reasons that follow, the Court should stay Plaintiff's excessive force claims and dismiss Plaintiff's remaining claims.

**Background**

On January 4, 2023, in Bastrop, Louisiana, Plaintiff barricaded the road on which he resided to create a "checkpoint." [doc. # 11, p. 1]. He suggests that he was attempting to prevent others from vandalizing his home; his home was vandalized before "to the point" he could no longer live in it. *Id.* Lieutenant John Doe arrived, Plaintiff removed the barricade, and Doe exited his vehicle at the end of Plaintiff's driveway. *Id.*

While "carrying a homemade war hammer[,]" Plaintiff "notified" Lieutenant Doe that he violated Plaintiff's property. [doc. # 11, p. 1]. Plaintiff alleges that Doe became angry and

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

shoved him, and Plaintiff "shoved him back, presenting the war hammer." *Id.* He claims that Doe then "tazed [him] in [his] head, stomach, arm, and shoulder." [doc. #s 1, p. 4; 11, p. 1].

Plaintiff claims that Corporal White arrived and "snatched the [tazer] probes out," stating that Plaintiff was resisting. [doc. # 11, p. 2]. Plaintiff maintains that he was not resisting. *Id.*

Plaintiff, who has seizures, claims that Corporal White was aware of his condition yet did not call an EMT.[2] [doc. # 11, p. 2]. When Plaintiff arrived at Morehouse Parish Jail, he was bleeding. *Id.* He has "had several seizures since." *Id.*

Plaintiff was arrested and charged with aggravated assault of a police officer and resisting arrest. [doc. # 11, p. 1]. His charges are pending. *Id.*

Plaintiff claims that no one read him his *Miranda* rights. [doc. # 1, p. 4].

Plaintiff claims that his arrest "led to the death of [his] therapy dog[,]" Zeus. [doc. # 1, p. 5]. Zeus died "on a leash at the barn where [Plaintiff] slept." [doc. # 11, p. 2]. Plaintiff writes: "the person I was denied contacting had made several attempts to contact the jail and sheriff's office and humane society to pick up Zeus and the blue and gold macaw to no avail." *Id.*

Plaintiff claims that staff at Morehouse Parish Jail did not give him seizure medication or a medical evaluation. [doc. # 11, p. 2].

For relief, Plaintiff seeks: (1) an EMT "to be called when tazers [are] deployed on detainees"; (2) *Miranda* rights read on arrest; (3) medical examinations "if someone has been diagnosed with a seizure disorder"; and (4) compensation for pain and suffering. [doc. # 1, p. 5].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a

---

[2] Presumably by EMT Plaintiff refers to an emergency medical technician.

prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Entities Unamenable to Suit**

Plaintiff names the Morehouse Parish Sheriff's Office and staff at Morehouse Parish Jail as defendants. [doc. #s 1, p. 2; 11, p. 2]. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

Here, the Court should dismiss Plaintiff's claims against Morehouse Parish Sheriff's Office and staff at Morehouse Parish Jail because they do not qualify as juridical persons. *See Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . ."); *Aucoin v. Terrebonne Par. Sheriff's Off.*, 2022 WL 16657429, at *1 (5th Cir. Nov. 3, 2022); *Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . .").

If by "staff" Plaintiff refers not to a singular entity but to individuals other than those he identified in his pleadings, he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a constitutional right.

As above, a complaint fails to state a claim on which relief may be granted when it fails

5

to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Further, Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Here, the undersigned instructed Plaintiff to "provide the name of each defendant who allegedly violated his constitutional rights and from whom he seeks relief[.]" [doc. # 8, p. 2]. Plaintiff filed an amended pleading, but he did not identify the "staff." Moreover, he does not sufficiently identify "any particular defendant's personal involvement in conduct that caused constitutional deprivation." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant). The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually

engaged in actions that caused the unconstitutional harm.").

Here, to the extent Plaintiff names "staff" as unidentified persons, the Court should dismiss Plaintiff's claims against them. As above, the Court should also dismiss Plaintiff's claims against Morehouse Parish Sheriff's Office and staff at Morehouse Parish Jail because they do not qualify as juridical persons.

### 3. Failure to Read *Miranda* Rights

Plaintiff claims that no one read him his rights under *Miranda v. Arizona*, 384 U.S. 436, 439 (1966). The alleged failure to read *Miranda* warnings, however, did not violate Plaintiff's constitutional rights and "cannot be grounds for a § 1983 action." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003); *see Foster v. Carroll Cty.*, 502 F. App'x 356, 358 (5th Cir. 2012). A "violation of the *Miranda* rule[]" does not provide "a basis for a claim under § 1983." *Vega v. Tekoh*, 2022 WL 2251304, at *4 (U.S. June 23, 2022). The Court should dismiss this claim.

### 4. *Heck v. Humphrey* and *Wallace v. Kato*

If Plaintiff is convicted of his pending charges, he may not be entitled to seek relief for his excessive force claims until any potential convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. A successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994).

While the rule in *Heck* does not extend to pending criminal matters, successful claims under Plaintiff's allegations could necessarily imply the invalidity of any future conviction.[4] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the excessive force claims—i.e., that Lieutenant Doe shocked Plaintiff with a tazer and that Corporal White "snatched the [tazer] probes out"—could necessarily imply the invalidity of a future conviction for aggravated assault and resisting arrest. As above, Plaintiff was charged with resisting arrest. Plaintiff, however, does not conceptually or temporally distinguish the factual bases of his criminal charge from the bases of his civil claims.[5] Plaintiff does not, for instance, concede that he is guilty of resisting arrest yet claim (i) that the force was excessive beyond what was necessary to secure his arrest or (ii) that the force was excessive because it occurred only before or after he resisted. Rather, he emphatically states that he "was not" resisting. [doc. # 11, p. 2].

If Plaintiff prevails on his excessive force claims—by establishing *inter alia* that any force used was excessive because he was not resisting—the ruling here could necessarily imply that he did not commit the charged crime of resisting arrest. *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 325 (5th Cir. 2004) (finding, where a plaintiff alleged that he did nothing wrong and was viciously attacked for no reason, that the claim was barred because it squarely challenged the factual determination that underlay his conviction for resisting an officer);

---

[4] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

[5] *See Bush, supra.*

*Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (finding, where the plaintiff was convicted of resisting arrest, disorderly conduct, and assault on a police officer, that the plaintiff's excessive-force claims were barred under *Heck* because "[h]is complaint present[ed] a single narrative of an unprovoked police attack; his 'broad claims of innocence relate[d] to the entire arrest encounter, and not merely a discrete part of it.'" (quoting *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 287 (5th Cir. 2013))).

      Successful excessive force claims could imply the invalidity of a future conviction for another reason. Under LA. REV. STAT. § 14:18(7), "The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed . . . [w]hen the offender's conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22." Under Article 19, "The use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person . . . , provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." LA. REV. STAT. § 14:19(A)(1)(a). Here, for instance, if Plaintiff proved that defendants used excessive force before Plaintiff used any force or violence in response to defendants' uses of force, he could essentially prove that his actions (if any) following the alleged excessive force amounted to justifiable self-defense, thus undermining a potential conviction.[6]

---

[6] In *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), the Fifth Circuit held that a Louisiana conviction for battery of an officer—a crime for which justification is an affirmative defense—prevented the plaintiff from suing for excessive force in connection with the incident. The court reasoned that "if the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction." Similarly, in *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004), the court reasoned: "[C]ertain convictions will prevent a plaintiff from bringing an excessive force claim. For example, we

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. *See Kato*, 549 U.S. at 393-94. Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, Plaintiff's excessive force claims are *related to* rulings that will likely be made concerning his pending charges. Accordingly, the Court should stay these claims pending the outcome of Plaintiff's ongoing criminal prosecution.[7]

---

have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. . . . Texas law permits an officer to use any force- even deadly force-to protect against an aggravated assault. *Sappington,* 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault." *See State v. Ceaser*, 2002-3021 (La. 10/21/03), 859 So. 2d 639 ("An individual in Louisiana has a time-honored right to resist an illegal arrest.").

[7] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

**5. Medical Care**

Plaintiff, who has seizures, claims that Corporal White was aware of his condition yet did not call an EMT. [doc. # 11, p. 2]. When Plaintiff arrived at jail, he was bleeding. *Id.* He has "had several seizures since." *Id.*

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir.

11

1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff does not plausibly allege that Corporal White *knew* he was exposed to a substantial risk of serious harm. Plaintiff alleges that he was shocked with a tazer device and that Corporal White was aware that he had a "seizure disorder[,]" but Plaintiff does not allege that White was aware of his seizure disorder before Doe deployed the tazer; in fact, he alleges that White "showed up" *after* Doe tazed him. [doc. # 11, p. 1]. More importantly, Plaintiff does not allege that he exhibited any symptoms of his disorder when he suggests White should have requested an EMT (i.e., after Doe tazed him).

In brief, Plaintiff appears to allege that Doe shocked him with a tazer, that White arrived thereafter, and that at some unknown time White became aware (Plaintiff does not specify how) of Plaintiff's (at that time) latent or asymptomatic seizure condition. While Plaintiff suggests he was exposed to *some* indeterminate risk, he does not allege that White *knew* of a substantial risk of serious harm.[8] Further, while Plaintiff alleges that he has "had several seizures since," he

---

[8] *See Rombach v. Culpepper*, 2021 WL 2944809, at *5 (5th Cir. July 13, 2021) (finding that no defendant knew the plaintiff was exposed to a substantial risk of serious harm where the plaintiff only told them that he "did not feel well and [that] he wanted to go to the hospital."); *Trevino v. Hinz*, 751 F. App'x 551, 556 (5th Cir. 2018) ("Plaintiffs' own allegations show that Trevino's symptoms were initially ambiguous, and that Officers Hauck and Hinz were therefore not unreasonable in believing she did not require immediate medical attention. Trevino vomited, had several shaking episodes, and told the officers she was sick. None of these symptoms clearly indicated Trevino was undergoing an emergency necessitating immediate medical attention."); *Moler v. Wells*, 18 F.4th 162, 168 (5th Cir. 2021) (finding that an officer did not know that the plaintiff was exposed to a substantial risk of serious harm because the plaintiff did not know the extent of his injury at the time and only told the officer that he felt minor pain in his arm); *Roberts v. Lessard*, 841 F. App'x 691 (5th Cir. 2021) (Correctional center guards were not subjectively aware that an inmate faced a substantial risk of harm even though the guards were

does not plausibly allege that White's decision to forego requesting an EMT—as opposed to Plaintiff's pre-existing 'seizure condition'—caused the later seizures.

Plaintiff does allege that he was bleeding when he arrived at the jail, but he does not allege that he was bleeding before he arrived or that White knew he was bleeding. In addition, Plaintiff does not seem to claim that he lacked care for any injury associated with his bleeding; rather, he claims that White did not request an EMT for his seizure disorder. The Court should dismiss this claim.

**6. Death of Therapy Dog**

Plaintiff claims that his arrest "led to the death of [his] therapy dog[,]" Zeus. [doc. # 1, p. 5]. Zeus died "on a leash at the barn where [Plaintiff] slept." [doc. # 11, p. 2]. Plaintiff writes: "the person I was denied contacting had made several attempts to contact the jail and sheriff's office and humane society to pick up Zeus and the blue and gold macaw to no avail." *Id.*

The undersigned is sympathetic to Plaintiff losing his dog. Plaintiff, however, does not state a plausible claim. He alleges that an unidentified person unsuccessfully attempted to contact "the jail and sheriff's office" to help Zeus, but Plaintiff does not identify any responsible defendant from the jail or sheriff's office. In addition, that the unidentified person was unsuccessful in contacting anyone suggests that no individual at the jail or sheriff's office knew or should have known of any risk to Zeus. Further, Plaintiff does not suggest that anyone at the jail or sheriff's office prevented him from arranging care for Zeus. He states that he was prevented from contacting someone, but he does not allege that his inability to contact the

---

aware the inmate was displaying stroke symptoms; the inmate's symptoms, including sweating, slurring speech, and trouble controlling movements could also have suggested that he was intoxicated, and it was uncontested that the guards believed the inmate was intoxicated).

13

individual caused Zeus's death. Rather, he states that the individual he was unable to contact knew Zeus required care and attempted to contact others to arrange care. The problem, from what the undersigned can glean, was that the individual was unable to reach anyone to arrange care.

Plaintiff alleges that his arrest "led to" his dog's death, but again he does not specify a responsible defendant. Even if he did, he does not plead plausible causation. His claim is essentially that if he was never arrested and incarcerated, Zeus would have survived. However, Plaintiff does not allege that any arresting officer was personally involved in or causally connected to caring for Zeus. While Plaintiff would not be incarcerated and unable to care for Zeus but for his arrest, any arresting officer's responsibility for, or involvement in, caring for Zeus after arresting Plaintiff is, absent more, too attenuated to establish plausible causation. He does not allege that any defendant knew or even should have known of a risk to Zeus. The Court should dismiss this claim.

### 7. False Arrest

Plaintiff does not appear to claim false arrest. At best he writes in the 'Relief' portion of his form complaint that he is seeking damages "of false arrest that led to the death of [his] therapy dog." [doc. # 1, p. 5]. His bald statement or request, however, is no more than a label of false arrest, a conclusion, or a formulaic recitation of a cause of action. To the extent Plaintiff seeks to raise a false arrest claim, the Court should dismiss it.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Joshua Michael Havens' excessive force claims be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with these claims, he must, within thirty (30) days of the date the criminal proceedings against him conclude, file a motion to lift the stay;
>
> b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;
>
> c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he chooses) in this action until the state court proceedings conclude; and
>
> d. Defendants shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 29th day of December, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge